UNITED STATES of America

v.

Socrates SIERRA, Appellant.

UNITED STATES of America

v.

Emad Daniel MAKHOUL, a/k/a Carlos, Appellant.

Nos. 91–5784, 92–5199.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 3, 1992.

Decided Dec. 8, 1992.

John M. Cicilline, Providence, R.I., for appellant, Sierra.

Larry Bronson, Bayonne, N.J., for appellant, Makhoul.

Michael Chertoff and Leslie F. Schwartz, U.S. Attys., Newark, N.J., for appellee.

Before: SLOVITER, Chief Judge, GREENBERG and SEITZ, Circuit Judges.

OPINION OF THE COURT

SLOVITER, Chief Judge.

### I.

#### Introduction

Defendants Socrates Sierra and Emad Makhoul were charged with conspiring to distribute and possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846 and possessing cocaine with intent to distribute, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(2). The jury found Sierra guilty on both counts and Makhoul guilty on the conspiracy count alone.

Makhoul was sentenced to 145 months imprisonment and five years supervised release; Sierra was sentenced to concurrent terms of 140 months on each count, five years supervised release on each count (also concurrent), and a fine of $17,500. These consolidated appeals followed.

### II.

#### Facts and Procedural History

Under the facts as shown at trial and which defendants do not contest on appeal, confidential informant Badih Barakat introduced Makhoul to government agent Joseph Klimek in March 1991 for the purpose of negotiating a drug transaction. That particular transaction was not completed, but Klimek gave Makhoul the beeper number for William Kean, ostensibly Klimek's

boss but in reality a government agent. Thereafter, Makhoul and Kean did arrange a transaction by telephone for the sale of five kilos of cocaine to Kean, with the delivery to be effected by Sierra. Sierra told Kean that he and Makhoul were partners. When the sale was about to be consummated outside a restaurant in New Jersey, agents arrested Sierra who was in possession of the five kilos of cocaine. Makhoul later turned himself in.

## III.

### Discussion

■ We consider preliminarily Sierra's argument that the district court abused its discretion in restricting the cross-examination of Barakat. We assume that Makhoul adequately preserved this objection, and thus consider it as to both defendants.

At trial, Sierra's counsel persistently sought to elicit from Barakat an admission that he was a heroin dealer, an admission Barakat just as persistently declined to make. Barakat did admit that he had previously pled guilty in 1991 to conspiracy to distribute heroin, conceding delivery of one kilo, and that he possessed three kilos of hashish in 1981. Several days after Barakat's testimony was concluded, Sierra sought to recall him on the ground that he had recently learned that Barakat conceded that he was a heroin dealer at his 1991 plea allocution. The district court denied this request primarily on the ground that Sierra was seeking to impeach the witness on a collateral matter. Under the circumstances of this case, particularly Barakat's earlier admission of his prior involvement in drug transactions, we cannot conclude that the district court abused its discretion with this ruling.

We turn then to the crux of defendants' appeal, which is that because the court reporting system malfunctioned and parts of the proceedings were not transcribed, their appeal is automatically prejudiced and they are entitled to a new trial.

The Court Reporter Act, which was enacted in 1944, provides in pertinent part that

each session of the court and [ ] every other proceeding designated by rule or order of the court or by one of the judges[ ] ... shall be record[ed] verbatim[, including] ... all proceedings in criminal cases had in open court....

28 U.S.C. § 753(b).

■ In *Stirone v. United States*, 341 F.2d 253, 256 (3d Cir.), *cert. denied*, 381 U.S. 902, 85 S.Ct. 1446, 14 L.Ed.2d 284 (1965), this court held that the failure to record jury selection in violation of the Court Reporter Act where there was no allegation of error in the voir dire does not constitute per se reversible error. Similarly, in *United States v. Sigal*, 341 F.2d 837, 839 (3d Cir.), *cert. denied*, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965), we found that the stenographer's failure to record the voir dire of the jury panel violated the Court Reporter Act. We held, however, that because the defendants had shown no prejudice, the error was harmless. *Id.*

Our view that the failure to comply with the Court Reporter Act does not warrant reversal without a specific showing of prejudice is generally shared by other circuits. *See, e.g., Calhoun v. United States*, 384 F.2d 180, 184 (5th Cir.1967). *See generally* Sheldon R. Shapiro, Annotation, *Prejudicial Effect of Federal District Court Reporter's Omissions in Recording Judicial Proceedings Where Such Omissions Constitute Failure to Comply With Court Reporter Act, 28 U.S.C.S. § 753(b)*, 12 A.L.R.Fed. 584 (1982 & Supp.1991) (collecting cases).

The Federal Rules of Appellate Procedure set forth the procedures by which the record may be reconstructed or supplemented when there has been a failure to record portions of the trial. Rule 10(c) provides that

if a transcript [from the district court proceedings] is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee, who may serve objections or proposed amendments thereto within 10 days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the district court for settlement and approval

and as settled and approved ·shall be included by the clerk of the district court in the record on appeal. Fed.R.App.P. 10(c). Under Rule 10(e), "the court of appeals, on proper suggestion or of its own initiative, may direct that the omission ... be corrected, and if necessary that a supplemental record be certified and transmitted." Fed.R.App.P. 10(e).

The appellate courts have used the option to reconstruct the record presented by Rule 10 according to the circumstances of the case. *See, e.g., United States v. Preciado-Cordobas*, 923 F.2d 159, 160 (11th Cir.1991) (retaining jurisdiction while remanding under Rule 10(e) for possible supplementation of non-recorded closing arguments); *United States v. Nolan*, 910 F.2d 1553, 1560 (7th Cir.1990) (failure to record sidebar not reversible error in absence of objection and in light of defendants' failure to reconstruct under Rule 10(c)), *cert. denied,* —— U.S. ——, 111 S.Ct. 1402, 113 L.Ed.2d 457 (1991); *Brown v. United States*, 314 F.2d 293, 295 (9th Cir.1963) (despite failure to allege prejudice, judgment vacated and remanded for determination of prejudice because of unrecorded summations). Often, the reconstructed record will enable the appellate court effectively to review the relevant issues. *See United States v. Cashwell*, 950 F.2d 699, 703 (11th Cir.1992) (original verbatim transcript not required for effective appellate review); *Marron v. Atlantic Refining Co.*, 176 F.2d 313, 315 (3d Cir.1949) (same), *cert. denied,* 339 U.S. 923, 70 S.Ct. 611, 94 L.Ed. 1345 (1950).

Defendants rely on *United States v. Selva*, 559 F.2d 1303 (5th Cir.1977), in arguing that they are entitled to a new trial. In that case, although the district court had determined that reconstruction of the closing arguments was impossible, it did not order a new trial. The court of appeals reversed and remanded for a new trial, holding that when counsel on appeal is the same as trial counsel, the defendant must show how s/he was specifically prejudiced from the absence of any portion of the trial transcript; but when a defendant is represented by new counsel on appeal and substantial portions of the trial transcript are missing, a new trial is required even in the absence of a showing of specific prejudice. *Id.* at 1306; *cf. United States v. Workcuff,*

422 F.2d 700, 702 (D.C.Cir.1970) (expressing concern that new appellate. counsel may face particular hardship where portions of trial transcript missing).

■ The *Selva* approach has not been widely followed. The courts in both *United States v. Antoine*, 906· F.2d 1379, 1381 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 398, 112 L.Ed.2d 407 (1990), and *United States v. Gallo*, 763 F.2d 1504, 1530–31, 1531 n. 40 (6th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986), rejected a rigid distinction based on the absence or presence of new counsel on appeal. In *Antoine,* the court stated that the· absence or presence of the same counsel on appeal is but "one significant factor" to consider in determining prejudice. 906 F.2d at 1381. We agree, particularly because the *Selva* approach would encourage the defendant to dismiss trial counsel and seek appointment of new counsel on appeal. This is contrary to well-established policy that the same counsel be retained for both the trial and appeal of a criminal case.

■ We turn therefore .to the circumstances of this case to determine what action is appropriate. In their principal briefs, defendants claimed that substantial portions of the trial transcript were missing, specifically, sidebar conferences, the jury charge, the jury's follow-up questions on the charge, the explanations by the judge, the verdict, and the post-trial motions. Apparently the defendants simply failed to order the relevant portions of the transcripts, because the government has provided a supplemental appendix with its brief containing a copy of the transcripts for almost all of the missing proceedings.

. Defendants have not filed a reply brief acknowledging receipt of this material and thus we are left to conjecture why they believe that reconstruction of the remaining non-recorded material (the jury charge and sidebars), as permitted by Rule 10(c), would not be a satisfactory remedy. ·

The written version of the jury instructions was provided to trial counsel and although we recognize that at times a judge may vary a few words from the written version of the charge, there has been no argument made here that such alterations, if any, were substantial. Without this

showing, any slight changes in the reading of the charge should make no difference to our review function. *Accord United States v. Perkins*, 498 F.2d 1054, 1058 (D.C.Cir.1974) (reconstructed charge sufficient). Although we note that in *United States v. Taylor*, 607 F.2d 153, 154 (5th Cir.1979), the court remanded to the district court to determine whether the written charge can be treated as part of the transcript, in this case the defendants have not sought that remedy. Significantly, defendants have not argued that any portion of the written charge was erroneous, and we are therefore unpersuaded that effective appellate review on the basis of the written charge is unavailing.

The non-recordation of some of the sidebar conferences presents a more difficult issue. We cannot accept the government's argument that the failure to record sidebars is less serious than the failure to record other portions of the trial, such as comments by the judge to the jury. *But see Gallo*, 763 F.2d at 1531 (failure to record comments to jury "viewed with greater disfavor than those made during side bar discussions"). The Court Reporter Act applies to all proceedings in open court, which includes sidebar conferences. *See Nolan*, 910 F.2d at 1559–60; *cf. United States v. Smith*, 787 F.2d 111, 114 (3d Cir.1986) (sidebar is integral part of trial). Instead, unrecorded sidebars should be examined for prejudice much as are other missing transcripts. *See, e.g., United States v. Snead*, 527 F.2d 590, 591 (4th Cir.1975) (per curiam) (no prejudice); *Edwards v. United States*, 374 F.2d 24, 26–27 (10th Cir.1966) (same), *cert. denied*, 389 U.S. 850, 88 S.Ct. 48, 19 L.Ed.2d 120 (1967).

However, inasmuch as many of the trial rulings made at sidebar are reflected in the recorded transcript of the trial proceedings, the mere absence of the sidebar transcripts does not signify prejudice. Defendants make no challenge to any evidence allowed in. Arguably, defendants may have proffered evidence which was not permitted

and would wish to raise that objection, but defendants' appellate counsel have apparently made no effort to ascertain whether there were any such objections. They could have sought to reconstruct the record in that respect by conference with trial counsel for submission to the district court. In the absence of that minimal effort, and in the absence of even an assertion of prejudicial rulings, we see no reason to direct a remand for the purpose of reconstruction of the unrecorded portions of the record.[1]

IV.

*Conclusion*

For the foregoing reasons, the judgments of conviction will be affirmed.

---

1. We note in passing our concern that there are apparently increased failures or omissions in the recording process, as reflected by the cases cited in the text. *See also Tait v. Armor Elevator Co.*, 958 F.2d 563, 565 n. 1 (3d Cir.1992), where we remarked specifically about the requirement in the Electronic Sound Recording Operator's Manual 6.2 that sidebar rulings be captured by the audio tracking system. It is, of course, the obligation of counsel and court personnel to ensure that the proceedings are adequately recorded for purposes of review.